Argued April 23, affirmed May 27, 1919.

## GUNTLEY *v.* NORTHERN PAC. TERMINAL CO.

### (181 Pac. 4.)

**Appeal and Error — Review — Nonsuit — Direction of Verdict — Evidence.**

  1. Appellate court, in considering appeal where trial court's action in overruling motions for nonsuit and for a directed verdict is assigned as error, will assume that plaintiff's testimony is true.

**Master and Servant — Injury to Employee — Contributory Negligence—Sufficiency of Evidence.**

  2. In warehouse employee's action for injuries from spike in boxcar door placed alongside of warehouse, at foot of steps, with spike protruding toward steps, involving question of whether employee was contributorily negligent in failing to avoid the door, evidence *held* to sustain verdict for employee.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.

The plaintiff alleges that the Northern Pacific Terminal Company is an Oregon corporation with

its principal office in Portland, engaged in the switching and transfer of cars and trains from spurs, switches, side-tracks and warehouses, to and upon different lines in the City of Portland, for profit, gain and hire; that the defendant American Can Company is a New Jersey corporation, authorized to do business in the State of Oregon and engaged in the manufacture of tin cans and containers, for which it employs agents, servants and laborers, and is conducted for profit; that about October 2, 1917, the plaintiff was employed by the defendant can company as a common laborer in and about Municipal Warehouse No. A, in the City of Portland, near the plant of that company, and that on the date mentioned the defendants placed "alongside of the south front of said warehouse at and near the said steps a boxcar door, and from said door there protruded a spike, being a forty-penny nail, from the said door on the outside; and plaintiff being compelled to pass down the said steps and by and alongside of said door, and while so passing his shoe of his right foot was caught and became fastened on said spike, thereby suddenly and violently throwing plaintiff to the ground and thereby seriously and permanently injuring plaintiff as hereinafter complained of." It is further averred that the defendants carelessly and negligently placed and left the door against the side of the warehouse, "near and at said steps and at and alongside of said walk and foot-passage and where said servants, employees and laborers were required to pass and travel along," and allowed and permitted "a spike as aforesaid to stick and protrude out from said door, and thereby and on account of said carelessness, recklessness and negligence plaintiff received" the injuries of which he complains. The plaintiff alleges that prior to his ac-

92 Or.—24

cident he had rejected the provisions of the "Workmen's Compensation Act" and his rejection was accepted by the can company and filed with the state Industrial Accident Commission.

The defendants filed separate answers, admitting their corporate character but denying that the plaintiff had rejected the "Workmen's Compensation Act" as alleged and traversing all other material allegations of the complaint. As a further and separate defense the defendants plead in effect, "that the pathway and steps along which plaintiff was passing were free of obstruction and that the injury received by the plaintiff, if any, was caused wholly and solely by the recklessness and negligence of the plaintiff himself, and was not caused in any degree by any recklessness or carelessness on the part" of either of the defendants.

The plaintiff replied to each answer, denying all new matter.

The case was tried before a jury, which returned a verdict for the plaintiff against both defendants, upon which judgment was entered and from which they appeal.

During the trial each defendant moved for a judgment of nonsuit and after the testimony was all taken, for a directed verdict, which motions were overruled. After judgment was entered each defendant moved for a new trial and those motions also were overruled. The defendants assign as error that there is insufficient evidence to justify the verdict and judgment; "that the said verdict and judgment are against the law, and with reference thereto it appears from the plaintiff's own evidence that the alleged injury to the plaintiff occurred in broad daylight, and that the car door and alleged spike on which plaintiff claims to

have been injured were plainly visible to anyone using his sense of sight; that there was ample room for plaintiff to pass and repass to avoid the same; that the same was not in the direct path on which plaintiff was going at the time of the injury, and that any person using reasonable prudence could pass and repass the place where the said door and the said spike were placed without coming in contact with the same''; and that the court erred in overruling the defendants' motions for nonsuit and for a directed verdict. No exceptions were taken to the charge of the trial court.                                    AFFIRMED.

For appellants there was a brief over the names of *Mr. James G. Wilson, Messrs. Teal, Minor & Winfree* and *Mr. George B. Guthrie,* with an oral argument by *Mr. Wilson.*

For respondent there was a brief and an oral argument by *Mr. J. C. Simmons.*

JOHNS, J.—The question to be determined is whether or not the evidence is sufficient to sustain the verdict. It appears from the record that while employees of the terminal company were engaged in switching they found a car door lying on the track at a point near the steps of the warehouse which the plaintiff descended at the time he received his alleged injuries; that with the assistance of some employees of the can company they removed the door from the track and placed it against the wall of the warehouse at the foot of the steps; that large spikes protruded through and on the outside of the car door towards the steps; that in going from the office to the warehouse the plaintiff usually came down the

steps and took a path that ran over to the warehouse, and that on the morning in question, in going down those steps his foot came in contact with one of the spikes protruding from the car door, as the result of which he fell to the ground and sustained his injuries.

The accident happened about 7:05 A. M. on October 2, 1917, when the weather was clear. The testimony of numerous witnesses for the defense tended to show that the car door had been removed from the track and placed against the wall of the warehouse about ten or twelve days before the accident, from which it was contended that the plaintiff in the ordinary course of his work knew that the car door was there and should have seen the protruding spikes; that he had an unobstructed pathway and that therefore he was guilty of contributory negligence which would bar his recovery. It must be conceded that the evidence of such witnesses was positive and unqualified on that point.

The plaintiff testified as follows:

"Q. Had you noticed that door there prior to that morning?

"A. I never seen that door before. * *

"Q. The first time you saw this door was when you got hurt?

"A. When I got hurt was the first time I ever seen that door.

"Q. You didn't know how it got there, or anything about it, did you?

"A. No, sir. * *

"A. I sat there, and I was looking at that door, I looked up and I saw the hinges broken, and I looked down at the bottom and I seen that spike. That was the first time I noticed it. * *

"Q. Now, Mr. Guntley, isn't it a fact that that door had been there alongside of the warehouse since the 23d day of September, 1917?

"A. I never seen that door before, until that time. * *

"Q. And you hadn't noticed that door?

"I never seen that door anywhere, until I got hurt that morning. * *

"A. No; but in sitting there on those steps, waiting to be taken home, I was looking at that door, as I stated before. That is why I say—I claim that that door was pulled over on that platform about 14 inches. * *

"Q. And (you) came out there and sat again; that was the first time you ever knew there was a nail there?

"A. That was the first time I ever knew the nail was there."

Ben Paul, a witness for the plaintiff, testified thus:

"Q. Now, were you down at the warehouse on the first of October?

"A. Yes, sir.

"Q. What was done there on that day, the first day of October, and the day before Mr. Guntley got hurt, in reference to a boxcar door; what was done?

"A. Well, the door came off of the car, and that is all I know; so the morning before it was put up there, a fellow that was on the train—some railroad fellows—came up there, and asked Mr. Gunderson to help put the door up— * *

"Q. Well, then, what did you and Mr. Gunderson do, Mr. Paul?

"A. Well, we put up the door, and carried—the railroad fellows came in on the switch that morning, and the door laid across the track where there is a little switch that turned, and closed their switch, and they couldn't throw the switch on account of the door being there; and so these railroad fellows came up there and asked Mr. Gunderson if they could get anybody to help them, and I happened to be inside of the building, No. A, working, and he happened to see me, and he asked me to come and help him; so we picked up the door and set it up beside the building. * *

"Q. Was that the day before Mr. Guntley got hurt?

"A. It was a day or two before he got hurt. I couldn't remember just what day it was. Me and a couple of boys put it up, and I went back to my work.

"Q. Where did you get the door from?

"A. We got it across the track. * *

"Q. Then where did you put it, Mr. Paul, from this place?

"A. We carried it in and put it beside the building, right by the lower steps where you go up to the little office door. * *

"Q. And who assisted you in putting that door up there?

"A. Mr. Gunderson.

"Q. And who else?

"A. The railroad fellows.

"Q. The fellows that were with the engine?

"A. With the engine; yes, sir.

"Q. And Mr. Gunderson is with the American Can Company?

"A. Yes, sir.

"Q. And what position did he hold at that time?

"A. Well, he holds—he is superintendent, or something. I don't understand; but I know he hired me to go to work.

"Q. Some kind of an officer or foreman?

"A. Yes, sir. * *

"Q. Well, what did you see there?

"A. Well, I seen three spikes in the door.

"Q. And how far were they protruding out of the door, if any at all?

"A. Well, they were out from the door about two and one-half inches. * *

"Q. And how high from the ground was that spike that was bent toward the steps?

"A. Well, I judge it was about a couple of inches from the ground, or three, or something like that."

James Carsner testified for the plaintiff as follows:

"Q. I will ask you in going from this place to the American Can Company, is it traveled by the laborers

and the servants in that warehouse—whether or not this route down there to the American Can Company is traveled?

"A. Across the railroad? Yes, sir.

"Q. That is usually and customarily traveled?

"A. Yes, sir; it is the short cut through there.

"Q. And what would be the long cut?

"A. You would have to come out here, and come down these stairs and around back here, and go around by the crates and around by the factory. There are crates right there by the municipal scales."

1. The testimony of this witness tended to show that the door was removed from the track and placed against the warehouse the day before the accident. Assuming, as we must for the purpose of this opinion, that the testimony on the part of the plaintiff was true, it would show that the switching crew of the terminal company found the car door lying on the track in front of the engine and with the aid of Mr. Gunderson, the foreman of the can company, it was removed from the track and placed against the wall of the warehouse at the foot of the steps which were used by employees of the can company in going to and from the office to the warehouse, and that on the outside, projecting from the car door, were three or four large spikes pointing toward the steps; that the car door was removed from the track the day before the accident and was never seen by the plaintiff until the morning that he received his injuries and that he was injured in going down the steps in his customary manner, by coming in contact with one of the protruding spikes, without any knowledge of its presence there.

The spike in the car door was the proximate cause of the injuries and the door had been placed against the warehouse wall by the joint action of the employees of both defendants. While those employees

testified. positively that it was placed there about ten days before the accident, the above testimony on the part of the plaintiff tends to show that it was so placed the day before the accident, and the plaintiff testified that he saw it for the first time on the morning of the accident.

Among others, the court gave the following instructions:

"The law requires a person to use his ordinary senses of sight and hearing for the protection of himself against injury.

"If you believe, from the evidence in this case, that the door in question was placed in a position so as to give ample room for passage alongside of it, and that a person paying ordinary attention to his walking would have noticed the same and avoided said door, then and in that event you are instructed that the defendants are not liable in this case, and the plaintiff cannot recover anything herein.

"If you believe, from the evidence, that the plaintiff at the time of the alleged injury, by which he claims to have been injured in this case, was rushing down the stairs, and not paying the attention to where he was going that an ordinarily prudent man would have, under the circumstances, and by reason of said fact the injury occurred, then and in that event you are instructed that the plaintiff was guilty of contributory negligence—negligence contributing to the injury, and, therefore, could not recover.

"It is indisputably shown in this case that the place where the plaintiff claims to have been injured was on premises belonging to the city of Portland, and not owned by the defendant, the Northern Pacific Terminal Company, or by the defendant, The American Can Company. There was no duty on the part of the defendant, Northern Pacific Terminal Company, or on the part of the defendant, The American Can Company, to keep said premises in a safe condition for the plaintiff, and the only duty owed by the defendant, Northern Pacific Terminal Company, and

the defendant, The American Can Company, was not wantonly to injure the plaintiff.

"Before a plaintiff can recover any sum whatever from a defendant, the defendant must have violated some duty which he owed to that plaintiff. If you find from the evidence, therefore, that the door in question was placed at the point in question by any employee of the Northern Pacific Terminal Company of Oregon, or by the American Can Company, but was not placed there wantonly or maliciously, then and in that event you are instructed that the plaintiff cannot recover in this case any verdict whatever against the defendant, Northern Pacific Terminal Company, or the defendant, The American Can Company.

"If you find from the evidence that the door in question, at the time of the alleged injury, was in a location where any ordinarily prudent person would have placed the same, under the circumstances, then there was no negligence on the part of the defendants, or their employees, in placing the same at said point, if you find they did so place the said door, and in that event your verdict should be in favor of the defendants."

2. Under this charge, favorable to the defendants, the jury found for the plaintiff. After a careful reading of the entire record we think that there was sufficient evidence to sustain the verdict. The judgment is affirmed.                    AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.